RECORD NUMBER: 14-1965

# United States Court of Appeals

*for the*

# Fourth Circuit

**ENCOMPASS INDEMNITY COMPANY,**
**an Foreign Corporation,**

*Plaintiff-Appellee,*

– v. –

**GEORGE JOSEPH JACOBS, JR. deceased, by G. PATRICK**
**JACOBS, Executor,**

*Defendant-Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT CHARLESTON**

# BRIEF OF APPELLEE

**BRENT K. KESNER**
**KESNER & KESNER, PLLC**
**P.O. Box 2587**
**Charleston, WV 25329**
**(304) 345-5200**

*Counsel for Plaintiff-Appellee*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus
case, except that a disclosure statement is **not** required from the United States, from an indigent
party, or from a state or local government in a pro se case. In mandamus cases arising from a
civil or bankruptcy action, all parties to the action in the district court are considered parties to
the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are
required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the
required disclosure statement, counsel may file the disclosure statement in paper rather than
electronic form. Counsel has a continuing duty to update this information.

No. __14-1965__        Caption: __Encompass Indemnity Co. v. George Joseph Jacobs, Jr., deceased__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Encompass Indemnity Company__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO

2.   Does party/amicus have any parent corporations?                              ☑ YES ☐ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent
     corporations:
     Allstate Insurance Company, whose parent corporation is Allstate Corporation.

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
     other publicly held entity?                                                  ☑ YES ☐ NO
     If yes, identify all such owners:
     Allstate Insurance Company, whose parent corporation is Allstate Corporation.

10/28/2013 SCC                              - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date:  September 24, 2014

Counsel for: Encompass Indemnity Company

## CERTIFICATE OF SERVICE
***************************

I certify that on  September 24, 2014   the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Cynthia M. Ranson
J. Michael Ranson
Ranson Law Offices
P.O. Box 3589
Charleston, WV  25336-3589

_____                      September 24, 2014
(signature)                                    (date)

- 2 -

## <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT

TABLE OF CONTENTS ...............................................................................i

TABLE OF AUTHORITIES .......................................................................iii

JURISDICTIONAL STATEMENT ............................................................. 1

STATEMENT OF THE ISSUES................................................................... 1

STATEMENT OF THE CASE...................................................................... 2

    The Underlying Claims ....................................................................... 2

    The Coverage Issues ............................................................................ 4

    This Litigation ..................................................................................... 5

SUMMARY OF ARGUMENT ................................................................... 10

ARGUMENT .............................................................................................. 11

  I.  STANDARD OF REVIEW ................................................................ 11

  II. DISCUSSION..................................................................................... 12

    A. The Jacobs vehicle did not qualify as an
       uninsured/underinsured motor vehicle for purposes of
       triggering coverage under the Encompass Policy and the bodily
       injuries claimed were not caused by an "accident."...................... 12

       1.  The District Court properly addressed the
           uninsured/underinsured motorist issue through its August
           15, 2014 Order....................................................................... 16

       2.  The Jacobs vehicle does not meet the definition of an
           uninsured motor vehicle. ....................................................... 18

3. The alleged bodily injuries were not caused by an "accident" as required to trigger the uninsured motorist coverage ................................................................................. 19

B. George Mullins was not a "covered person" under any segment of the Encompass Policy. ................................................................ 24

1. Mullins was not a covered person under the Homeowners Segment of the Encompass Policy. .......................................... 25

2. Mullins was not an insured under the Motor Vehicle Segment of the Encompass Policy. .......................................... 28

3. Mullins was not a covered person under the Personal Umbrella Segment of the Policy. ............................................. 32

CONCLUSION AND REQUEST FOR ORAL ARGUMENT ................... 37

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Am. States Ins. Co. v. Surbaugh*,
    231 W. Va. 288, 745 S.E.2d 179 (2013) ............................................. 21

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...................................................................... 12

*Camden-Clark Mem'l Hosp. Ass'n v. St. Paul Fire & Marine Ins. Co.*,
    224 W. Va. 228, 682 S.E.2d 566 (2009) ............................................. 22

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...................................................................... 12

*Green v. Farm Bureau Mut. Auto. Ins. Co.*,
    139 W. Va. 475, 80 S.E.2d 424 (1954) ............................................. 18

*Metro. Prop. & Liab. Ins. Co. v. Acord*,
    195 W.Va. 444, 465 S.E.2d 901 (1995) ............................................. 29

*Payne v. Weston*,
    195 W. Va. 502, 466 S.E.2d 161 (1995) ............................................. 29

*Soliva v. Shand, Morahan & Co.*,
    176 W. Va. 430, 345 S.E.2d 33 (1986) ............................................. 18

*Spencer v. McClure*,
    217 W. Va. 442, 618 S.E.2d 451 (2005) .................................... 23, 24

*State Bancorp, Inc. v. U.S. Fid. & Guar. Ins. Co.*,
    199 W. Va. 99, 483 S.E.2d 228 (1996) ............................................. 20

*Sylvia Dev. Corp. v. Calvert County Md.*,
    48 F. 3d 810 (4th Cir. 1995) ............................................................. 11

*Tennant v. Smallwood*,
    211 W. Va. 703, 568 S.E.2d 10 (2002) ............................................. 18

iii

*Tolley v. ACF Indus., Inc.*,
    212 W. Va. 548, 575 S.E.2d 158 (2002) ............................................ 23

*W. Va. Fire & Cas. Co. v. Stanley*,
    216 W. Va. 40, 602 S.E.2d 483 (2004) .............................................. 20

**<u>Statutes:</u>**

*W. Va. Code § 33-6-31(a)* ............................................................... 29

*W. Va. Code § 61-2-14* .................................................................. 27

**<u>Rules:</u>**

*Fed. R. Civ. P. 56(a)* ..................................................................... 12

*Fed. R. Civ. P. 56(c)* ..................................................................... 12

*Fed. R. Civ. P. 56(d)* ..................................................................... 12

## JURISDICTIONAL STATEMENT

Jurisdiction is uncontested. Plaintiff-Appellee Encompass Indemnity Company ("Encompass") filed this declaratory action against G. Patrick Jacobs, Executor of the Estate of George Joseph Jacobs, Jr., pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. Encompass is an Illinois Corporation and Mr. Jacobs is a resident of West Virginia. For purposes of jurisdiction, it is undisputed that there was complete diversity of the parties and the amount in controversy was over $75,000.00. The District Court entered summary judgment on August 18, 2014 and this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Whether the District Court properly granted summary judgment when there is no genuine question of fact material to the duties of Encompass under the three separate segments of coverage under the Encompass Policy. Specifically, whether the District Court correctly found that the Jacobs Estate was not entitled to recover uninsured/underinsured motorists coverage benefits because the vehicle in question was not an uninsured/underinsured motor vehicle and there was no allegation of an accident, and whether the District Court correctly found that

George Mullins was not a "covered person" for purposes of the liability coverage under the automobile, homeowners and umbrella segments of the policy because he was not using the subject vehicle with permission.

## STATEMENT OF THE CASE

G. Patrick Jacobs, as executor of the Estate of George Joseph Jacobs, Jr., filed a civil action in the Circuit Court of Kanawha County, West Virginia, alleging that on January 11, 2011, George Jacobs was accosted by a man who forced his way into George Jacobs' vehicle and demanded money while at the Kroger parking lot in Charleston, Kanawha County, West Virginia. The Jacobs Estate placed George Jacobs' insurance carrier, Encompass, on notice of the action and sought to recover damages from Encompass for Mr. Jacobs' death. Encompass filed this declaratory action, seeking a declaratory judgment that it had no duty to provide coverage for the Estate's claims under any segment of the Encompass Policy. JA 7-28.

### *The Underlying Claims*

This action arises out of incidents which took place beginning on January 11, 2011, and which continued through February, 2012. (See the Underlying Complaint, and Amended Complaint generally at JA 41-48 and 161-171.) On January 11, 2011, George Jacobs ("Jacobs") was accosted by an intruder, later

2

identified as Gary Mullins ("Mullins"), who forced his way into Jacobs' vehicle in the parking lot of a Kroger grocery store in Charleston, Kanawha County, West Virginia. JA 42 at ¶ 5. Mullins demanded money from Jacobs. JA 42 at ¶ 7. The Estate alleged that Jacobs was held in his vehicle for a period of time against his will and feared he would be killed or seriously injured if he did not comply with Mullins' demands. JA 42-43 at ¶¶ 6, 8. Mullins allegedly ordered Jacobs to leave the Kroger parking lot in order to travel to Jacobs' home, where Jacobs gave Mullins $1,800.00. JA 43 at ¶¶ 10, 14. When Mullins allegedly demanded another $200.00, Jacobs wrote a check in the amount of $200.00. JA 44 at ¶ 15. Mullins then forced Jacobs to go the City National Bank in Kanawha City, Charleston, Kanawha County, West Virginia, where Jacobs cashed the check and gave the $200.00 to Mullins. JA 44 at ¶¶ 17-19. Mullins then demanded that Jacobs return to the Kroger parking lot so that Mullins could get in his vehicle and leave. JA 44-45 at ¶¶ 20, 21.

Over several months, Mullins allegedly demanded and took additional money from Jacobs at his home. JA 45 at ¶ 22. The continued criminal acts of Mullins were investigated by the Charleston Police Department and Mullins was indicted by the Kanawha County Grand Jury for kidnaping and other charges. JA 45 at ¶¶ 25, 26. On February 6, 2012, Jacobs testified against Mullins in the

3

criminal trial of Mullins. JA 46 at ¶ 28.  On February 7, 2012, less than 24 hours after testifying, Jacobs passed away from natural causes.  (See the Certificate of Death, JA 173 and the underlying Complaint at JA 46 at ¶ 29.)   In conjunction with the filing of the underlying Complaint, G. Patrick Jacobs, as Executor for the Estate of George Jacobs, placed Encompass on notice of an uninsured/underinsured motorist claim and also suggested additional duties and/or obligations on the part of Encompass under the homeowners and umbrella segments of the Encompass policy for Defendant's claims. (See the Encompass Complaint JA 9 at ¶12.)

*The Coverage Issues*

As a result of Defendant's underlying state action, Encompass filed this declaratory action, asking the Court to address the coverage issues concerning Policy No. 239822945 ("the Policy"), issued by Encompass to Jacobs, in effect on January 11, 2011. (See JA 7-28, the Encompass Complaint and the Encompass Policy at JA 50-160.)  Encompass asserted that there is no coverage for the Estate's claims under the Policy and asked that it be relieved from any further duty or obligation in connection with the underlying state action. JA 7-28.  In particular, Encompass  asserted that the Policy provided no liability coverage for the Estate's claims against Mullins under the auto, homeowners or umbrella

4

segments of the Policy because Mullins was not a "covered person" under the terms of the Policy.  JA 25-27.  Encompass also specifically asserted that the Estate was not entitled to recover uninsured or underinsured motorist coverage because the Estate was not entitled to recover damages from the owner or operator of an uninsured or underinsured motor vehicle.  JA 25-26.  In that regard, Encompass pointed out that because the named insured, Mr. Jacobs was the owner of the vehicle at issue, it could not meet the Policy definition of an uninsured or underinsured motor vehicle for purposes of triggering coverage under the Encompass Policy.  JA 25-26.

*This Litigation*

On February 3, 2014, Encompass filed its Motion For Summary Judgment and accompanying Memorandum Of Law in this case, asking the Court to find that no coverage existed for the Estate's claims under any segment of the Encompass policy. JA 39 -210.  While much of the focus of Encompass' arguments was on the issue of liability coverage and the question of whether Mullins qualified as a "covered person, " Encompass also specifically asked the Court to find that no coverage existed under the uninsured/underinsured motorists provisions of the Policy.  JA 203-204.   The Estate responded on February 17, 2014 JA 211-344, but confined its arguments to the issue of liability coverage and whether Mullins

5

qualified as a "covered person." JA 211-229. Encompass then filed its Reply on February 24, 2014 (JA 345-360), and again specifically asked the Court to find that no uninsured or underinsured motorist coverage existed because the subject vehicle was owned by Mr. Jacobs and, therefore, did not qualify as an uninsured or underinsured motor vehicle for purposes of coverage under the Encompass Policy. JA 354-356. With the issues fully briefed, the parties proceeded to prepare for the final pretrial conference, which was held on May 30, 2014. In the parties' Integrated Pretrial Order, the Jacobs Estate indicated that it did not believe there were any contested issues of fact and identified the following "contested issues of law" which remained to be decided by the Court:

1. Whether Gary Wayne Mullins was a covered person under the Encompass policy;

2. Whether Gary Wayne Mullins was a permissive user of the Jacobs vehicle;

3. Whether the use of the Jacobs' vehicle resulted in injury to Mr. Jacobs;

4. Whether the injury to Mr. Jacobs was caused as the result of an accident;

5. Whether a West Virginia Motor Vehicle Policy Can Exclude Coverage for Bodily Injury;

6. Whether false imprisonment is a personal injury;

6

7.    Whether 'permission to use' a motor vehicle can be
provided under extreme emergency or duress?

JA 385-386. While each of these "contested issues" relate to whether or not the

Encompass Policy provides liability coverage for the Estate's claims against

Mullins, they did not specifically address the question of whether uninsured or

underinsured motorist coverage was available to the Estate. Then, at the Pretrial

Conference held on May 30, 2014, the Estate's counsel expressly represented to

the Court that the only contested issue was whether or not Mullins was a "covered

person" such that liability coverage would be available under the Encompass

Policy. JA 460-461. In fact, counsel did not address any issues regarding the

uninsured or underinsured motorists coverage in response to a direct question from

the Court regarding what issues remained. Specifically, the Court inquired:

> The Court:   All right. Well, then I would propose then
> to vacate the rest of the scheduling order
> and then, you know, it will be on me to get a
> ruling. Now, and just - - I don't want to get
> into a - - necessarily a full-blown argument
> of the summary judgment motion. I don't
> generally do - - actually, typically, I try to
> have those things resolved before a pretrial
> conference. I just didn't get to it this time,
> but having read the briefs last night, it
> seems to me that the entire - - the position of
> the Jacobs' is built upon the notion that Mr.
> Mullins was a covered person.

7

Ms. Ranson:          Correct.

The Court:   That's the entire premise of it?

Ms. Ranson:          Yes your honor.

The Court:   All right.  If that's the case then, I don't
             intend - - I won't rule on that motion before
             this, but I am going to give you all an
             opportunity by next Friday to file something
             that tells - - that - - to file something trying
             to convince me why that's not a frivolous
             position.

Ms. Ranson:          Okay.

JA 460-461.  The Estate then filed its Supplement[sic] Response To Motion For

Summary Judgment on June 6, 2014, in which the Estate again directed all of its

arguments to the issue of whether or not Mullins was a "covered person" entitled

to liability coverage under the Encompass Policy. JA 463-481.  As it had done

before, the Estate simply ignored, and certainly did not address the issue of

whether uninsured or underinsured motorists coverage would apply.  JA 463-481.

On August 15, 2014, the District Court entered its Memorandum Opinion

And Order  granting Encompass' Motion For Summary Judgment.  JA 493-505.

In its Order, the District Court extensively addressed the Estate's arguments with

respect to whether Mullins could be a "covered person" for purposes of triggering

liability coverage under each segment of the Encompass Policy and rejected all of

8

them. JA 496-503.  It also pointed out in a footnote that the Estate had not

responded to Encompass' arguments with respect to the uninsured and

underinsured motorist coverage and the Court found in favor of Encompass on

those issues as well.  JA 502.  The District Court indicated:

> It does not appear that the Estate has asserted any
> argument that coverage is available under the
> uninsured/underinsured ("UM/UIM") provisions of the
> Policy.  (ECF 19 at 9-13; ECF 43 at 8-16), although
> Encompass has repeatedly argued that such coverage
> does not exist.  (ECF 18 at 14-15; ECF 20 at 10-12.)  To
> the extent that such a claim is made by the Estate,
> however, the Court also rejects it.

JA 502.  Having effectively conceded the issue before the District Court, the

Estate has now inexplicably focused its briefing in this appeal on the issue of

uninsured/underinsured motorists coverage and has ignored the question of

whether or not Mullins qualified as a "covered person" under the Encompass

Policy.  In fact, at pg. 12 of its brief, the Appellant now expressly states, "The

Jacobs' Estate acknowledges that Encompass has no duty to defend or indemnify

Gary Mullins under the Policy."  In light of this change, Encompass has no choice

but to direct this Response Brief to  both the uninsured/underinsured motorists

coverage issues raised in the Estate's Brief and the liability coverage issues dealt

with in the Estate's underlying memoranda and the August 15, 2014 Order from
which this appeal arises.[1]

## SUMMARY OF ARGUMENT

The District Court correctly found that uninsured and underinsured
motorists coverage under the Encompass Policy does not apply to the Estate's
claims because Jacobs was the owner of the subject vehicle.  The plain language
of the Encompass Policy clearly indicates that uninsured/underinsured motorists
coverage only applies to damages the covered person can recover from the owner
or operator of an uninsured or underinsured motor vehicle.  Because the Policy
expressly excludes vehicles owned by the named insured from the definition of an
uninsured or underinsured motor vehicle, the Estate cannot recover uninsured or
underinsured motorists benefits under the facts of this case.  Moreover, the Estate
effectively conceded the uninsured/underinsured motorists issue by failing to
argue it to the District Court or even mention it during the May 30, 2014 Pretrial
Conference.  Likewise, the plain language of the Encompass Policy also requires

---

[1]      Because the Estate's arguments with respect to coverage under the
Encompass Policy in this case have been a "moving target," it is uncertain whether
the Estate's Reply Brief will address the liability coverage issues that were previously
the focus of its memoranda before the District Court. In order to preserve its position
in the event the Estate again changes its position, Encompass is including its
argument with respect to those issues in this Response Brief.

10

that the bodily injury be caused by an "accident" for uninsured or underinsured motorists coverage to apply.  No accident is alleged here and the conduct of Mullins was clearly intentional since he was convicted of an intentional crime.

The District Court also correctly found that the Encompass Policy did not afford liability coverage for the Estate's claims against Mullins since he did not qualify as a "covered person" under any segment of the Policy.  Specifically, Mullins was not using the Jacobs vehicle with the consent of its owner and he met none of the other criteria for coverage under the Motor Vehicle Segment. Likewise, Mr. Jacobs' automobile was not a "motor vehicle" to which the Homeowners Segment applies since it was not a golf cart, a vehicle intended for use off road, or any other type of covered vehicle under the Homeowners Segment.  Finally, Mullins was not a covered person under the Personal Umbrella Segment since none of the underlying coverages apply and he was not a named insured or a family member and cannot be said to have been using the Jacobs vehicle with permission.

## ARGUMENT

### I.    STANDARD OF REVIEW

The Court reviews a district court's grant of summary judgment *de novo*, applying the same standard as the district court.  *Sylvia Dev. Corp. v. Calvert*

*County Md.*, 48 F. 3d 810, 817 (4th Cir. 1995). "Summary judgment is justified if, from the totality of the evidence presented, including pleadings, depositions, answers to interrogatories and affidavits, the court is satisfied that there is no genuine issue for trial and the moving party is entitled to judgment as a matter of law. *Id.*

Summary judgment is mandated if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. The movant's burden "may be discharged by 'showing' - - that is, pointing out to the district court - - that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To defeat summary judgment, nonmovants must present "concrete evidence from which a reasonable juror could return a verdict in [their] favor[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Fed. R. Civ. P. 56(c), (d)*.

## II.    DISCUSSION

### A.    The Jacobs vehicle did not qualify as an uninsured/underinsured motor vehicle for purposes of triggering coverage under the Encompass Policy and the bodily injuries claimed were not caused by an "accident."

The District Court correctly found that none of the claims asserted by the Estate are covered under the uninsured/underinsured motorist segments of the

12

Encompass Policy. In that regard, Encompass agreed in its Policy to pay compensatory damages a "covered person" is legally entitled to recover from the "owner or operator" of an "uninsured motor vehicle" or "underinsured motor vehicle" for "bodily injury" and "property damage" caused by an "accident." (See the Encompass Policy at JA 333-335.) Here, it was undisputed that Mr. Jacobs was the owner of the vehicle in which the kidnaping took place. It is also undisputed that Mr. Jacobs was not injured in any collision, crash or other unanticipated "accident" while driving the car with Mullins. Therefore, the Jacobs' vehicle does meet the Policy definition of either an "uninsured motor vehicle" or an "underinsured motor vehicle" and Mr. Jacobs did not sustain any bodily injury as the result of an accident to trigger the coverage.

The Encompass Policy provides, in relevant part, as follows:

* * *

**UNINSURED/UNDERINSURED MOTORISTS
COVERAGE - WEST VIRGINIA**

In consideration of an additional premium, if the Coverage Summary shows an amount of "Uninsured Motorists" or "Underinsured Motorists" coverage, we will provide the coverage described by the provisions of this endorsement.

**DEFINITIONS**

The following words and phrases are defined for this **"UNINSURED/ UNDERINSURED MOTORISTS**

13

**COVERAGE"** endorsement. Only in regard to the coverage provided by this endorsement, the following definitions replace any corresponding definitions in the **"MOTOR VEHICLE"** Segment.

1.    **Covered Person** means:

    a.    You for the ownership, maintenance or use by any vehicle, except while ***occupying***, or when struck by, a vehicle owned by you which is not insured for this coverage under this policy;

* * *

2.    **Insured Motor Vehicle** means:

    a.    An ***automobile***, motorcycle or motorhome shown in the Coverage Summary. This includes an ***automobile***, motorcycle or motorhome that replaces one shown in the Coverage Summary, if you ask us to insure the ***automobile***, motorcycle or motorhome, and we agree.

* * *

4.    **Underinsured Motor Vehicle** means a land motor vehicle or a trailer of any type to which a liability bond or policy applies at the time of the ***accident*** but the amount paid for ***bodily injury*** or ***property damage*** to a ***covered person*** under that bond or policy is not enough to pay the full amount the ***covered person*** is legally entitled to receive as damages.

* * *

5.    **Uninsured Motor Vehicle** means a land motor vehicle or trailer of any type:

    a.    To which neither:

14

(1)     A liability bond or policy; or

(2)     Cash or securities on file with the West Virginia State Treasurer;

applies at the time of the ***accident***.

\* \* \*

In addition, neither **uninsured motor vehicle** nor **underinsured motor vehicle** includes any vehicle or equipment

1.      Owned by or furnished for the regular use of you or any family member.

\* \* \*

**INSURING AGREEMENT**

We will pay compensatory damages which any **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** where such coverage is indicated as applicable in the Coverage Summary because of:

**1.      Bodily Injury** sustained by any **covered person** and caused by an **accident.**

\* \* \*

The owner or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle** or **underinsured motor vehicle.**

(See JA 333-334.)  The Policy also provides that "'You' and 'your' refer to the person

shown as the 'Named Insured' in the Coverage Summary and his or her spouse if a

resident of the same household." JA 311.  It defines the term "Accident" as "an event

15

that unexpectedly, unintentionally, and instantly causes **bodily injury** or **property damage** during the policy period." JA 297. In this case, Mr. Jacobs was identified as the named insured under the Encompass Policy. JA 237. Because the Jacobs vehicle does not meet the Policy definition of an uninsured motor vehicle and Mr. Jacobs was not alleged to have been injured in an "accident," the Encompass uninsured motorists coverage simply does not apply to the Estate's claims.

> 1. *The District Court properly addressed the uninsured/underinsured motorist issue through its August 15, 2014 Order.*

In its brief, the Estate asserts that the District Court's decision to grant summary judgment with respect to its claims for uninsured and underinsured motorists coverage was "*sua sponte*" and indicates:

> The district court was not asked to, nor did it need to, determine whether George Jacobs was a covered person and entitled to uninsured motorists coverage as that issue was conceded by Encompass at the outset and even acknowledged by the Court.

(See Appellant's Brief at pg. 8.) While it is true that there was never a dispute as to whether Mr. Jacobs was a "covered person" under the Encompass Policy, it is clear that Encompass did repeatedly ask the Court to find that the Estate was not entitled to uninsured or underinsured motorists coverage benefits. (See the Encompass

16

Complaint at JA 25-26, the Encompass Motion For Summary Judgment at JA 203-204 and the Encompass Reply at JA 354-356.) It is equally clear that the Estate did not advance any argument to contest the issue. (See the Estate's Response at JA 211-229 and the Estate's Supplement at JA 463-481.) Moreover, the Estate's counsel did not include the uninsured/underinsured motorist coverage claims in its listing of contested issues of law (JA 385-386) and did not mention them to the Court when asked specifically about any other pending issues at the May 30, 2014 pretrial conference. (JA 460-461.) Under these circumstances, it is clear that the Estate conceded the uninsured/underinsured motorist coverage issue before the District Court and is now attempting to revive the issue through this appeal.

In order to support its position, the Estate repeatedly asserts that the District Court found that Mullins was "using" the Jacobs vehicle and implies that Mullins could be considered an uninsured motorist since the District Court found that Mullins did not have liability coverage for such use of the Jacobs vehicle under the Encompass Policy. (See Appellant's brief at pgs. 9, 16 and 18.) In fact, the District Court indicated that it was merely "accepting for the purpose of argument that Mr. Mullins could be understood to have operated the vehicle through Mr. Jacobs. . . " JA 501. (See also JA 498 where the District Court indicated, "[e]ven crediting the

17

proposition that Mr. Mullins could be understood to have been 'using' the vehicle. . . ") Nor does the Estate offer any legal authority for its proposition that a kidnaper can "operate" or "use" a vehicle through threats to the victim for purposes of obtaining uninsured or underinsured motorist coverage. More importantly, the Estate simply ignores the language of the Encompass Policy which indicates that "neither **uninsured motor vehicle** nor **underinsured motor vehicle** includes any vehicle or equipment . . . Owned by or furnished for the regular use of you or any **family member**" (JA 334) as well as the requirement in the insuring agreement that the bodily injury be "caused by an accident." (JA 334.) Here, that language mandates that there is no uninsured or underinsured motorists coverage for the Estate's claims.

2.    *The Jacobs vehicle does not meet the definition of an uninsured motor vehicle.*

It is undisputed that West Virginia law governs the subject claims. In West Virginia, clear insurance policy provisions are to be applied. Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.*, 176 W. Va. 430, 345 S.E.2d 33 (1986)); *Green v. Farm Bureau Mut. Auto. Ins. Co.*, 139 W. Va. 475, 80 S.E.2d 424, 426 (1954). Likewise, an insurer may validly limit coverage, and policy provisions that limit coverage are placed in a policy for that very reason. *Green*, 80 S.E.2d at 426. Moreover, insurance coverage is a matter of law if material facts are undisputed. Syl. Pt. 1, *Tennant v.*

18

*Smallwood*, 211 W. Va. 703, 568 S.E.2d 10 (2002). Because it is undisputed that the Jacobs' vehicle was owned by Mr. Jacobs and he was the named insured under the Policy, there could be no genuine question of fact regarding whether his vehicle meets the Encompass Policy definition of either an uninsured or and underinsured vehicle. The Jacobs vehicle clearly falls within the language exempting any vehicle "owned by or furnished for the regular use of you or any family member." Similarly, it cannot be established that the owner or operator of any "uninsured or underinsured motor vehicle" is liable to the Jacobs Estate since the only vehicle at issue in this case was the one owned by Mr. Jacobs. Therefore, the District Court correctly found that there is no coverage for the Estate's claims under the uninsured/underinsured segment of the Encompass Policy.

3. *The alleged bodily injuries were not caused by an "accident" as required to trigger the uninsured motorist coverage.*

In this case, it is undisputed that Mullins was convicted of intentionally kidnaping the elderly Mr. Jacobs. Any "factual questions" regarding his intentions in doing so were laid to rest at the time he was convicted. Therefore, it is uncertain how a conscious decision to kidnap another person and extort money from them could constitute an "accident" under the Encompass Policy since it was neither unexpected or unintentional. (See the Encompass Policy definition of "accident" at JA 297.) The

19

Encompass definition is consistent with West Virginia law where the term "accident" has been normally defined as "a chance event or event arising from unknown causes." *W. V. Fire & Cas. Co. v. Stanley*, 216 W. Va. 40, 49, 602 S.E.2d 483 (2004). Likewise, in *State Bancorp, Inc. v. U.S. Fid. & Guar. Ins. Co.*, 199 W.Va. 99, 483 S.E.2d 228 (1996), the West Virginia State Supreme Court discussed the meaning of the term "accident" and noted:

> Ordinarily, "accident" is defined as "an event occurring by chance or arising from unknown causes[.]" *Webster's New Collegiate Dictionary* 7, (1981). As one court has explained,
>
>> an 'accident' generally means an unusual, unexpected and unforseen event. . . . An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforseen happening occurs which produces the damage. . . . To be an accident, both the means and the result must be unforseen, involuntary, unexpected and unusual.

*State Bancorp*, 199 W. Va. at 105. In its effort to find some source of compensation, the Estate asks the Court to simply ignore the plain language of the Encompass Policy. Here, there is no allegation that Mr. Jacobs was injured in a car crash or collision which occurred while Mullins was kidnaping Mr. Jacobs in the insured vehicle. Instead, the Estate is seeking to stretch the term "accident" to include merely riding in the vehicle while being kidnaped. While it is unfortunate that Mr. Jacobs was the victim of a crime, such intentional acts are simply not accidents and do not

20

trigger uninsured motorists coverage under the plain language of the Encompass Policy.

In the case of *American States Insurance Co. v. Surbaugh*, 231 W.Va. 288, 745 S.E.2d 179 (2013), the West Virginia State Supreme Court of Appeals noted:

> [A] court should read policy provisions to avoid ambiguities and not torture the language to create them. If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue.

*Surbaugh*, 231 W. Va. at 292, 183. Here, the Estate is asking the Court to torture the language of the Encompass Policy to try to create uninsured motorists coverage where it clearly does not exist. In effect, the Estate wants the Court to find that an insured's own vehicle can be an uninsured motor vehicle if the insured is kidnaped while driving it and forced to drive to some other location. The Estate further asks the Court to conclude that merely being forced to make such a drive constitutes an "accident," and to speculate that the kidnaping somehow caused Mr. Jacobs death many months later.        With respect to the requirement of an "accident" causing bodily injury, it should also be noted that the Estate's claims in that regard rest upon speculation that Mr. Jacobs' kidnaping on January 11, 2011 somehow caused or contributed to his death on February 7, 2012. The Estate does not assert that Mr.

21

Jacobs was physically injured on January 11, 2011. Nor did the Estate provide any expert testimony or opinion to suggest that his death was proximately caused by the conduct of Mullins.  Instead, the only evidence offered by the Estate on this issue was the Affidavit of G. Patrick Jacobs,  Executor of the Jacobs Estate, who stated:

> Upon information and belief, George Joseph Jacobs, Jr. My father and the decedent herein died as the result of post-traumatic stress syndrome caused by the events that occurred on January 11, 2011.

(See JA 233.)  Under West Virginia "law regarding the shifting burdens of proof[,]" in insurance coverage litigation, the insured bears the initial burden of "'demonstrating the existence of coverage under the general insuring clause; that is, the insured should first demonstrate that, assuming no exclusions are applicable, all or a portion of the judgment is encompassed by the policy.'" *Camden-Clark Mem'l Hosp. Ass'n v. St. Paul Fire & Marine Ins. Co.*, 224 W.Va. 228, 236, 682 S.E.2d 566 (2009) (citation omitted). Only if the insured can show the policy's basic applicability does the insurer bear "'the burden of proving the applicability of a policy exclusion.'" *Id.* (citation omitted). Thus, it was the Estate's initial burden to establish that Mr. Jacobs' death was somehow caused by a covered cause of loss under the Encompass Policy, specifically, an accident caused by the operation of an uninsured motor

vehicle.  Here, there was no uninsured motor vehicle and there was no evidence to

suggest that an accident was the cause of Mr. Jacobs death.

In West Virginia, the burden of proof is on a claimant in a tort action to prove

that the  alleged tortious conduct "was the proximate cause of the injury."  *Spencer*

*v. McClure*, 217 W.Va. 442, 446, 618 S.E.2d 451 (2005).  West Virginia's Supreme

Court has also noted:

> The proximate cause of any injury is the last negligent act
> contributing to the injury and without which the injury
> would not have occurred. . . . In other words, 'Proximate
> cause' must be understood to be that cause which in actual
> sequence, unbroken by any independent cause, produced
> the wrong complained of, without which the wrong would
> not have occurred.

*Id.*  (citations omitted.)  While the executor of the Jacobs Estate may believe that his

father's death was caused by the kidnaping, as opposed to the stress of testifying at

Mullins' criminal trial or some other cause, that belief, without more, presents

nothing more than mere speculation that the kidnaping was the cause.  In *Tolley v.*

*ACF Industries, Inc.*, 212 W.Va. 548, 575 S.E.2d 158 (2002), the West Virginia State

Supreme Court explained that "the law is clear that a mere possibility of causation is

not sufficient to allow a reasonable jury to find causation."  *Tolley*, 212 W. Va. at

558.  Citing *Tolley*, the Court in *Spencer*, supra, noted that the claimant had offered

only testimony that it was "possible" that the claimant's injuries were caused by the

23

subject accident and found that such speculative evidence was insufficient to prove proximate cause. *Spencer*, 217 W. Va. at 447. Here, the Estate did not even offer the testimony of a medical expert to establish the "possibility" that an insured cause of loss was the proximate cause of Mr. Jacobs' death. Therefore, the Estate could not meet its burden of establishing that an accident caused by the operation of an uninsured motor vehicle caused some bodily injury to a covered person and the District Court properly found that Encompass was entitled to judgment as a matter of law.

## B. George Mullins was not a "covered person" under any segment of the Encompass Policy.

While the Estate now suggests at pg. 12 of its brief, that it no longer contests whether Encompass has a duty to defend or indemnify Gary Mullins under the Policy, that issue was the focus of the Estate's arguments before the District Court and the focus of the August 15, 2014 Order which is being appealed here. Therefore, in order to preserve its position in the event the Estate again changes its focus and argument in its Reply Brief, Encompass would also note that the District Court correctly found that Mullins was not a "covered person" or insured under any segment of the Encompass Policy.

24

*1.    Mullins was not a covered person under the Homeowners Segment of the Encompass Policy.*

The homeowners segment of the Encompass Policy applies if a claim is brought against a "Covered Person," and indicates Encompass' agreement to pay claims for which a "Covered Person" is liable.  JA 288.  However, Mullins is not a "Covered Person" under the Encompass Policy.   In that regard, the relevant homeowners provisions of the Policy define a "Covered Person as  follows:

* * *

**3.**    **Covered Person(s)** means you and the following residents of your household:

   a.     Your *family members*;
   b.     Any other person under the age of 21 who is in the care of any person named above;
* * *
   d.     With respect to any motor vehicle to which this **"HOME"** Segment applies:

      (1)     Persons while engaged in your employ or that any person included in 3.a. or 3.b. above; or
      (2)     Other persons using the vehicle on an *insured location* with your permission.

* * *

(See JA 274.)  The Estate previously seized upon the language of "Item D" to suggest that because Mullins used Mr. Jacobs' car during the kidnaping, he meets the

definition of a "Covered Person." However, this completely ignores the fact that Mr. Jacobs' automobile was not a "motor vehicle" to which the "HOME Segment" applies. Specifically, the Policy provides:

**LOSSES WE DO NOT COVER**

1.    **Personal Liability and Medical Expense** coverages do not apply to ***bodily injury*** or ***property damages***:

* * *

(c)    Arising out of the ownership, maintenance, occupancy, renting, loaning, use, entrusting, loading or unloading of any motor vehicles, other than:

(1)    A motorized golf cart when being used to play golf on a golf course, or for travel between the **residence premises** and its community golf course for golfing purposes only.

(2)    A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and;

(a)    Not owned by a **covered person**; or

(b)    Owned by a **covered person** and being used on an **insured location** at the time of the **accident**.

(3)    A vehicle or conveyance not subject to motor vehicle registration which is:

(a)    Being used to service a **covered person's** residence at the time of the **accident**;

26

(b)    Designed for assisting the handicapped; or

(c)    In dead storage on an **insured location**;

(4)    *Bodily injury* to a **residence employee** arising out of and in the course of the **residence employee's** employment by a **covered person**.

(See JA 290.)  Since it is undisputed that Mr. Jacobs' car was not a golf cart, an off road vehicle, or a vehicle not subject to motor vehicle registration, it is clear that the definition of a "covered  person" relied upon by the Estate would not apply to Mullins, even if he would have had permission to use the Jacobs car, which he clearly did not.

With respect to the issue of whether Mullins had "permission" to use Mr. Jacobs' car, as the Estate previously suggested, Mullins was convicted of kidnaping Mr. Jacobs following a jury trial.  (See JA 231-232)  Pursuant to *West Virginia Code § 61-2-14*, the crime of kidnaping is defined as "Any person who takes away another person, or detains another person **against such person's will**, with the intent to marry or defile the person, . . ." (emphasis supplied.)  Therefore, it has been established beyond a reasonable doubt that Mullins took Mr. Jacobs from the Kroger parking lot "against his will" and, thereby, could not have had "permission" to use the Jacobs vehicle at that time.  Under those circumstances, there is simply no basis to conclude

that Mullins qualified as a "covered person" under the Homeowners Segment of the Encompass Policy.

Finally, it should be noted that the Estate's previous assertion that there is coverage under the Homeowner's Segment because "false imprisonment" is a covered personal injury ignores the fact that, in this case, it was Mullins who committed the alleged act of false imprisonment. Because he is not a "covered person" under the liability coverage for the reasons set forth above, the fact that false imprisonment by a "covered person" could be covered is simply irrelevant. The District Court, therefore, properly rejected all of the Estate's arguments with respect to the Homeowners Segment of the Encompass Policy.

> 2.  *Mullins was not an insured under the Motor Vehicle Segment of the Encompass Policy.*

Using the same tortured interpretation of what is meant by using a vehicle with "permission," the Estate also previously asserted that Mullins was a "covered person" for purposes of the liability provisions of the Motor Vehicle Segment of the Encompass Policy. In that regard, the Estate asserted that Mullins had "implied permission" to use the Jacobs vehicle since the January 11, 2011 kidnaping could be considered an "extreme emergency." JA 220. Once again, this interpretation of the facts is completely inconsistent with the fact that Mullins was convicted of kidnaping

28

which, by its very definition involves taking someone "against their will." (See JA 231-232)      West Virginia's State Supreme Court has stated:

> Consistent with the omnibus clause of *West Virginia Code §33-6-31(a)* (1992), an insurer may properly deny liability coverage where the express terms of an automobile insurance policy provide that in order for liability coverage to exist, a driver, who is not otherwise insured under the policy, must have received the named insured's permission to use the automobile, and said driver lacked the express or implied permission of the named insured prior to using the vehicle.

Syl. Pt. 2, *Metro. Prop. & Liab. Ins. Co. v. Acord*, 195 W. Va. 444, 465 S.E.2d 901 (1995). Similarly, the Court has noted that "[a] court should read policy provisions to avoid ambiguities and not torture the language to create them." *Payne v. Weston*, 195 W.Va. 502, 507, 466 S.E.2d 161 (1995) (citation omitted). In this case, it is undisputed that the Encompass Policy provides that there is no coverage where the vehicle is being used without the permission of the named insured or a family member. It states, in relevant part, as follows:

## SPECIAL MOTOR VEHICLE

### DEFINITIONS

In this **"MOTOR VEHICLE"** Segment, certain words and phrases are italicized, which identifies them as having specific meaning for this **"MOTOR VEHICLE"** Segment. The meaning of each italicized word or phrase is provided in the **Definitions** below.

29

\* \* \*

7.   **Covered Person(s):**

a.   Under **Personal Liability - Motor Vehicle** means:

(1)   You or any ***family member*** for the ownership, maintenance or use of any covered ***motor vehicle***.

(2)   Any other person ***occupying*** or using any covered ***motor vehicle*** with permission from you or a ***family member***.

(3)   With respect to a covered ***motor vehicle*** that you own or that is shown on the Coverage Summary, any person or organization legally responsible but only for acts or omissions of any person included in 7(a)(1) above.

\* \* \*

9.   **Family Member** means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

For the purpose of this definition, to be considered a resident of your household when evaluating coverage for a loss a person must have been actually residing in your household on the date the loss occurred. However, your:
a.   Son;
b.   Daughter;
c.   Ward; or
d.   Foster child;

In the United States military or away at school will be considered a resident of your household unless he or she has demonstrated an intent to reside elsewhere permanently.

\* \* \*

30

(See JA 297-298.) Because there was no genuine question of fact regarding whether Mullins was using the Jacobs vehicle with permission on January 11, 2011, the District Court properly granted summary judgment that Mullins was not a "covered person" for purposes of liability coverage under the Motor Vehicle Segment of the Encompass Policy as a matter of law.

The Estate's prior assertion that Encompass cannot deny coverage up to the mandatory minimum limits under the financial responsibility law (*W. Va. Code §33-6-31(a)*), is also without merit. As noted above, the Court in *Metropolitan Property & Liability Ins. Co. v. Acord*, supra. recognized in Syllabus Point 2 that, under *West Virginia Code §33-6-31(a)*), an insurer can properly deny liability coverage when the vehicle was being operated without permission. Similarly, the Estate's argument that a "named driver exclusion" cannot be enforced up to the mandatory minimum limits does not apply since no such exclusion is at issue here. Instead, the Estate simply has no claim against a "covered person" under the Encompass Policy and, therefore, cannot maintain a claim for the liability coverage under the Motor Vehicle segment of the Encompass Policy.

3.      *Mullins was not a covered person under the Personal Umbrella Segment of the Policy.*

As discussed above, Mullins is not a "covered person" under any of the underlying coverages of the Encompass Policy because he is not a family member of Jacobs, is not under the age of 21, was not legally responsible for the acts or omissions of Jacobs, and did use or occupy Jacobs' vehicle with his permission. The Personal Umbrella Segment of the Encompass Policy provides, in relevant part, as follows:

\* \* \*

## PERSONAL UMBRELLA COVERAGE ENDORSEMENT
## WEST VIRGINIA

\* \* \*

In consideration of an additional premium, we will provide the coverage described by the provisions of this endorsement.

### DEFINITIONS

Certain words and phrases are italicized, which identifies them as having a special meaning for this endorsement.  The meaning of each italicized word or phrase is provided in the **Definitions** below.

\* \* \*

**4.**      **Covered Person(s)** means you and the following residents of your household living where you reside:

a.      Your *family members*;

32

      b.     Any other person under the age of 21 who is in the care of any person named above;

                                        \* \* \*

      d.     For a covered ***motor vehicle*** that you own or that is shown on the Coverage Summary, any person or organization legally responsible for acts or omissions of any person included in 4.a. or 4.b. above.

                                          \* \* \*

      f.     Any other person using or ***occupying*** any covered ***motor vehicle*** or watercraft with permission from you or a ***family member***.

                                          \* \* \*

**5.**     **Family Member** means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

For the purpose of this definition, to be considered a resident of your household when evaluating coverage for a loss, a person must have been actually residing in your household on the date the loss occurred.  However, your:

      a.     Son;
      b.     Daughter;
      c.     Ward; or
      d.     Foster child;

In the United States military or away at school will be considered a resident of your household unless he or she has demonstrated an intent to reside elsewhere permanently.

**6.**     **Insured Location** means:

      a.     A location which is shown for "Personal Umbrella" in the Coverage Summary;

                                          \* \* \*

**8.**     **Motor Vehicle** means:

      a.     An ***automobile***.

                                          \* \* \*

33

**9.**     **Occupying** means in, upon, or getting in, out, on or off.

**10.**     **Occurrence** means:

    a.     An accident including a series of related events resulting from continuous or repeated exposure to the same general conditions that causes ***bodily injury*** or ***property damage*** during the policy period; or

    b.     An offense, including a series of related offenses, committed during the policy period, which results in ***personal injury***. All losses arising out of such act or series of acts, regardless of the frequency thereof or number of claimants, shall be deemed to arise out of one offense.

**11.**     **Personal Injury** means injury arising out of one or more of the following offenses: libel, slander, false arrest, wrongful eviction, wrongful detention, wrongful entry, malicious prosecution, false imprisonment, invasion of privacy of defamation of character.

**12.**     **Property Damage** means physical injury to or destruction of property including loss of use of the property.

\* \* \*

**14.**     **Underlying policy** or **underlying insurance** means any policy providing the ***covered person*** primary liability insurance.

### PERSONAL UMBRELLA COVERAGE
### INSURING AGREEMENT

We will pay damages for which a ***covered person*** becomes legally liable due to an ***occurrence*** resulting in ***personal injury***, ***bodily injury*** or ***property damage***, up to the limit of liability shown in the Coverage

Summary for "Personal Umbrella."  Any payment is subject to the *minimum retained limit*, the exclusions listed in the section called **Losses We Do Not cover** and the other provisions of this endorsement.

We will pay prejudgment interest awarded against a *covered person*. However, we will pay prejudgment interest only on that portion of an award that is covered by this policy.  Prejudgment interest is subject to, and not in addition to, the limit of liability shown in the Coverage Summary for "Personal Umbrella."

\* \* \*

**LOSSES WE DO NOT COVER**

We do not provide any coverage under this endorsement for:

1.      Benefits payable to you or anyone else under any:

    a.      No-Fault;
    b.      Uninsured or Underinsured Motorist;
    c.      Medical Expense or Medical Payments; or
    d.      Motorcycle Guest Passenger Liability;
        coverage, or similar coverage.

\* \* \*

5.      Any *personal injury*:

    a.      Caused by a violation of a law or ordinance by, or with the knowledge or the expressed or implied consent of any *covered person*; or

\* \* \*

9.      *Bodily injury* or *property damage* arising from use of a *motor vehicle* or watercraft without a reasonable belief that the *covered person* is entitled to do so.

\* \* \*

17.      *Bodily Injury* liability to you or any *family member*.  This exclusion also applies to any claim made or suit brought against you or any *covered person*:

35

       (a)    To repay; or

       (b)    Share damages with;

another person who may be obligated to pay damages because of ***bodily injury*** liability to a ***covered person***.

\* \* \*

**27.**      ***Personal injury*** to you or a ***covered person*** within the meaning of part a. or b. of the ***covered person*** definition.

(See JA 251-261.)

Again, Mullins was not a named insured or a family member and cannot be said to have been using the Jacobs vehicle with permission. The personal umbrella segment provides that Encompass will pay damages for which a "covered person" becomes legally liable, due to an "occurrence" which results in "personal injury," "bodily injury" or "property damage."  JA 253.  Here, Mullins was not a "covered person" and, as discussed above, his actions on January 11, 2011 cannot be described as an "accident."  Therefore, the District Court correctly found that the Personal Umbrella Segment of the Policy does not provide coverage for the liability claims of the Estate against Mullins because Mullins is not a "covered person" under the Encompass Policy.

36

## CONCLUSION AND REQUEST FOR ORAL ARGUMENT

Plaintiff-Appellee Encompass Indemnity Company, asks the Court to affirm the District Court's Order entered August 15, 2014, because the Order properly granted summary judgment to Encompass with respect to all of the Jacobs Estate's claims.

Plaintiff-Appellee does not believe oral argument is necessary and that the matters in dispute can be fully resolved by the Court through the briefing.

Respectfully submitted,

ENCOMPASS INDEMNITY COMPANY,

By Counsel

_/s/ Brent K. Kesner_

Brent K. Kesner
bkesner@kkblaw.net
Kesner & Kesner, PLLC
P. O. Box 2587
Charleston, WV  25329
304-345-5200
_Counsel for Plaintiffs-Appellee_

37

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 14-1965          **Caption:** Encompass Indemnity Co. v. George Joseph Jacobs

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]   this brief contains _____7,788_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]   this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]   this brief has been prepared in a proportionally spaced typeface using
   WordPerfiect12 [*identify word processing program*] in
   14 Point, Times New Roman [*identify font size and type style*]; **or**

   [ ]   this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) Brent K. Kesner

Attorney for Appellee

Dated: 12/11/2014

# CERTIFICATE OF SERVICE

I certify that on  12/11/2014  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Cynthia M. Ranson
Ranson Law Offices
1562 Kanawha Boulevard East
P.O. Box 3589
Charleston, WV  25336-3589
(304) 345-1990
cmr@ransonlaw.com

/s/ Brent K. Kesner
_____
Signature

12/11/2014
_____
Date